BORDEN (SICKELS v.).   See Cases Nos. 12,-832 and 12,833.

BORDEN (UNITED STATES v.).   See Case No. 14,625.

BORDEN, The HOLDER.   See Case No. 6,-600.

BORDENTOWN, The.   See Case No. 12,180.

## Case No. 1,657.

BORDMAN et al. v. ELIZABETH.

[1 Pet. Adm. 128.] [1]

District Court, D. Pennsylvania.   1798.

SEAMEN—WAGES— CAPTURE OF VESSEL — DESERTION — REFUSAL TO REJOIN THE VESSEL — CONDEMNATION.

1. The seamen of a vessel sent in for adjudication, were carried off by the capturing frigate, and afterwards liberated, when they might have rejoined their vessel which was acquitted, and earned her freight. Wages allowed to the time the seamen might have rejoined their vessel.

[Cited in Pitman v. Hooper, Case No. 11,186.]

2. Wantonly neglecting or refusing to rejoin amounts to desertion.

3. Positions ruled, in sundry cases, of vessels carried in for adjudication. Seamen bound to remain with the ship. Voluntary abandonment of this duty, a forfeiture. But not where prevented from remaining on board.

4. While they remain, they are entitled to wages, &c. They may be permitted to return home, without prejudice to their claims.

5. Bound to wait for the first adjudication, and not longer. Claim for wages suspended until the fate of the ship is decided. If restored, wages for the voyage must be paid.

6. Condemnation does not defeat the claim of wages for a former part of the voyage.

[7. Disapproved in Bronde v. Haven, Case No. 1,924, in respect to the doctrine that seamen are entitled to wages for half the time that a vessel remains in a foreign port after discharge of cargo.]

In admiralty. This was a case, in which several seamen [Bordman, Wilson, and others], of an American ship [2] [the brig Elizabeth], carried into a port of a belligerent captor for adjudication, claimed their wages for the whole voyage. They were forcibly taken out of the Elizabeth, and put on board the capturing frigate. They were carried into another port of the captor, and there liberated. It appeared in evidence, that the seamen were informed of the place in which their vessel lay, and that it was in their power to rejoin her. She was finally acquitted, proceeded on her voyage, and earned her freight. Wages, pro tanto, to the time the seamen were liberated, were decreed. As to the residue claimed for the voyage, the libel was dismissed.

[Before PETERS, District Judge.]

—

It was held that the sailors, not being in fault until they neglected, when liberated, to re-enter the ship, should be paid to that time. Full wages were given in a similar case, where a mariner had it not in his power to re-enter on board his ship. Hart v. The Littlejohn [Case No. 6,153]. The port, in which some of the mariners were landed, was at some distance from that in which the ship lay. There appeared some ground for

[1] [Reported by Hon. Richard Peters, District Judge.]
[2] "Ship," in the maritime laws and language, is a generic term, including all vessels; without attention to specific description.

the seamen to entertain an opinion, that their ship would depart, before they could travel to the port in which she then was. This, in the opinion of the judge, repelled the charge of unlawful intent. If they had wantonly, and without any reasonable excuse, or merely with a view to other employment, neglected or refused to rejoin the ship, it would have amounted to desertion, and forfeiture of all claim to wages. The mariner is bound to rejoin the ship, whenever it is in his power; and the master is under an obligation to receive him. If, on either side, there have been laches, in this respect, decrees have, in sundry instances, been given against the master, or mariner, as the one, or the other, was in fault.

The judge said, that he had, on summary examinations, under the act of congress, in many cases, established the following positions:

First. That seamen are bound to remain with a neutral ship, carried by a belligerent party, into a port of the captors for adjudication.

Second. That a voluntary abandonment of their duty in this respect, amounts to desertion and forfeiture of wages.

Third. But where they are prevented from remaining on board, either by the captors, or the master, or have not provisions, or accommodations, and are without money, or means of subsistence, they are not chargeable with any consequences.

Fourth. That while they remain to assist in preserving the ship, and ready to proceed on the voyage, they are entitled to their wages, and the master, or owner, is bound to furnish them with provisions, or money, for subsistence. Yet, if the master chooses to permit their return home, they may so return, without prejudice to any claims they legally have, depending on the fate of the ship.

Fifth. That seamen are not bound to remain with, or near, the ship, after an unfavourable adjudication in the lower court of admiralty of the captors, though an appeal may be entered, and the vessel remain in custody and unsold. But they are bound to wait, if required, for this adjudication; not only to take care of the ship, and her cargo, if permitted so to do, but to afford their testimony in the cause, when required to be used on the trial, in the first instance, and transmitted among the apostella, in case of appeal.

Sixth. That where a vessel is carried in for adjudication, condemned in the lower court of admiralty, and an appeal is entered, the claim for wages must be suspended, until the event of that appeal is known. If the owner recover freight, or damages in lieu thereof, or the ship be restored, the wages are due, and must be paid, when, and not before, he receives compensation, or recovers the ship.

Seventh. The carrying in a neutral ship for adjudication, or even if she be legal prize,

does not in any event, interrupt or defeat the claim of the seamen to wages, for a former part of the voyage, in which freight has been earned. The seamen must recover wages to the last port of delivery, and for half the time the vessel staid there. The period of stay, at such last port, being thus divided, on a supposition that the one half thereof, is taken up in discharging her cargo, and the latter half in re-loading the ship. This latter half of that period, is accounted a portion of another part of the voyage, and the wages accruing therefore, share the fate of the ship, in the voyage interrupted by the capture.